## <u>PETITION FOR WRIT OF MANDAMUS</u>

(Chefs: 3:23-CV-00385-MPM-RP)



## Statement of Related Cases

Justin's son is now eighteen-years old, still a minor under state law, but an adult under federal law. Several months before his eighteenth birthday, he filed a 42 U. S. C. 42 U. S. C. 1983 suit against the judge seeking declaratory relief holding that he had never established standing to have his interests, best or otherwise, litigated by the state and that the manner in which the state asserted his best interests resulted in irreparable injury to him because the state deprived him of his fit father without jurisdiction, in fundamentally unfair judicial proceedings, without providing any substantive guarantees for his rights, and did so in a manner that punished him for the marital choices of his parents.

This suit was dismissed because he was a minor acting pro se. Although the district court refused to protect his rights in any way because he was technically a minor, the district court was all too happy to keep his money.

Shortly after he turned eighteen years old, he refiled the same suit and that suit is in the preliminary stages where attempts to serve the state court judge are ongoing and he is facing difficulty in getting the state judge served even though federal rules require government officials to waive formal service.

Existing precedent from the Fifth Circuit holds that state court judges in family law matters cannot be sued, leaving no possibility of vindicating federal rights in federal courts. The Fifth Circuit holds, in an act of marital discrimination, that state courts are proper venues in which to vindicate federal rights even where those state court judges absolutely refuse to even recognize the federal causes of action.

The likelihood of success in this suit is NOT high, but it is relevant in that a child under state law is suing to have it declared that the state court is acting contrary to his best interests by depriving him of his fit father.

## Relief Sought

Petitioner Justin McPhail respectfully requests that the Court grant this petition for writ of mandamus and direct the district court to comply with 28 U. S. C. §455 and recuse accordingly.

## Issues Presented

(1) Whether this Court should direct the district court to act upon Justin's §455 Motion requesting that the judge of the district court recuse because his close connections with the Mississippi statutes from his ten-years serving as a congressman in Mississippi and from upholding those statutes during his four-years as a Mississippi Supreme Court justice and the potential reputational damage he would suffer should Justin prevail in his challenge to the state's family code and the unconstitutional manner in which Mississippi court judges simultaneously exercise political and judicial jurisdiction over the same parties and the same subject matter under the same facts and circumstances

(2) Whether this Court should remind the district court that state judges may NOT be permitted to judge their own political policy vindication actions by Supremacy Clause preemptive command.

## Facts Necessary to Understand Petition

*Six years imprisoned under the state's interest of securing the best interests of a child against his fit father against the father's fundamental right to be presumed fit and be presumed to make choices that are best for his child and to be free from compelled search, seizure, and speech that is unreasonable and unjustified is enough time to serve as a political prisoner.*

Justin has been in jail now for over six-years for no other reason than that the state of Mississippi asserts an interest in protecting Justin's 18-year-old minor child's best interests as against his fit father's fundamental parental rights under a state scheme that punishes children and parents for the otherwise lawful and constitutionally protected choices of the parents.

Justin has filed a habeas corpus petition in the federal district court and over four-months ago filed a motion asking the district court judge to recuse because his previous experience as a state legislator and as a state supreme court justice make it reasonable to conclude that the judge can NOT meet the standard of impartiality required under 28 U.S. C. §455 when the result of Justin's prevailing in his challenges to manifest injustice created by the state scheme would bring discredit to the district court judge for his service in support of the scheme over a fourteen-year period.

Justin is raising jurisdictional challenges against the state court judge that nullify the contempt charges. Justin is also asserting that the systemic manner in which state court judges in Mississippi violate jurisdictional rules prevents Justin as well as all other parents and children subject to the civil law statute from ever being able to vindicate their federal rights in either a state or federal court.

Contrary to the state's assertions, Justin can NOT be made to prove his fitness as a parent simply because Justin divorced his son's mother. Contrary to the state's assertions, Justin does NOT hold the keys to his release because the keys to his release require that he waive his fundamental rights to be free from a broad exploratory search of his mind, to be free from the seizure involved in that compelled search, and to be free

NOT to speak against his interests to a state therapist where he is required to prove his fitness as a parent to the state's investigator.

The federal district judge spent ten-years in the Mississippi Legislature passing many statutes including those in the Mississippi family law code that Justin in challenging and it is impossible to definitively discern the judge's ties to any particular family law statute. Further, the federal district court judge spent four years as a Mississippi Supreme Court Justice where he upheld statutes within the Mississippi family law code that Justin is challenging. Should Justin prevail in his numerous and very basic legal challenges to these statutes it will become unavoidably clear that state judges have rigged the system from top to bottom where the federal district judge spent four-years at the top of that system.

The state of Mississippi family law code delegates to a sole state official political executive authority to administer, regulate, and enforce that code against a particular family of individuals regarding the same subject matter under the same set of facts and under the same conditions. That civil law code then delegates judicial authority to hear challenges to the state's policy interests and challenges to the administration, regulation, and enforcement of those policy interests to the same sole state official.

This sole state official is granted presumptive unbridled discretion to impose viewpoint-based prior restraints against close family members justified by a merely substantial state interest that can reach the level of absolute restraint against all speech and association of close family members. Then, when those family members seek to raise First Amendment challenges to that presumptive authority to impose viewpoint-based prior restraints, they must bring that challenge to the very state official who

asserted their own authority to impose that prior restraint. The judge who issued the prior restraint now sits in judgement of the constitutionality of that prior restraint.

This scheme clearly violates well-established law in Mississippi, see <u>Reeves v. Gunn</u>, 307 So. 3d 436, 444 (Miss: 2020):

> Under Mississippi's clear separation of powers, to the judiciary belongs judicial power and no legislative or executive power. See Miss. Const. Art. 1, §§ 1 and 2.

See also <u>In re Hooker</u>, 87 So. 3d 401, 405 (Miss: 2012):

> 18. Despite the Marbury Court's declaration of its "emphatic" duty to interpret the Constitution, Chief Justice Marshall cautioned:
>
> > The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.
>
> Under this doctrine, the United States Supreme Court—as well as this Court—has refused to exercise jurisdiction over a matter when there was a "textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it...."[8] This principle has carried forward.

See also <u>5K FARMS v. MISSISSIPPI STATE TAX COM'N</u>, 94 So. 3d 291, 296 (Miss: Court of Appeals 2011):

> "We believe no citation of authority is needed for the universally accepted principle that if there be a clash between the edicts of the Constitution and the legislative enactment, the latter must yield." Newell, 308 So.2d at 77. "The rule is well settled that the judicial power cannot be taken away by legislative action. Nor may the Legislature regulate the judicial discretion or judgment that is vested in the courts." 16A Am.Jur.2d Constitutional Law § 286, at 209-10 (1998).

See also <u>Wimley v. Reid</u>, 991 So. 2d 135, 137, 138 (Miss: 2008):

Separation of powers.

9. In her supplemental briefing, Wimley sets forth the following excellent synopsis of this Court's constitutional authority:

> Articles 1 and 6 of the Mississippi Constitution of 1890 address the role of the judiciary and the constitutional powers bestowed upon it. In each of these articles the drafters and those that have revised the Constitution since that time set forth an unambiguous pronouncement of the authority vested in the Mississippi Supreme Court.

> The Separation of Powers Doctrine, memorialized in Miss. Const., Art. I, §§ 1 and 2, was meant to prescribe limitations on the power of each of the three co-equal governmental branches. The Doctrine serves to ensure that each body refrains from encroaching upon the authority of the other. The legislative history of the Constitution illustrates that the drafters of the 1890 version intentionally deleted a single phrase from the 1832 and 1869 Constitutions that questioned the strict mandate of the separation of powers. See Alexander v. State By and Through Allain, 441 So.2d 1329 (Miss.1983).

10. Wimley also points us to the following quote from the United States Supreme Court:

> This separation is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital ... namely, to preclude a commingling of these essentially different powers of government in the same hands.... If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows ... that each 138*138 department should be kept completely independent of the others.

O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356, (1933).

Needless to say, in child custody suits between fit parents the standards are very different, broad discretion and a merely substantial state interest is always held to provide sufficient authority to impose viewpoint-based prior restraints against this class of individual. When judges judge themselves, what other outcome could there be?

The Mississippi family law code regulates fundamental First Amendment protected interest and authorizes viewpoint-based prior restraints all of which is presumptively

unconstitutional under federal law which mandates that a state official must appear and provide evidence through testimony to overcome this presumption of unconstitutionality.

The only individual to whom the Mississippi delegates any political authority to provide evidence through testimony regarding whether the state's burden has been met is the judge who is deciding if the burden has been met. The burden has never NOT been met even though no judge may submit testimony in his own court. It is literally impossible for Mississippi to ever overcome the federal burden of proof necessary to regulate fundamental rights in parent vs parent child custody suits.

This is how very basic and fundamental are the failures of the state's scheme. The scheme has become so very bad that nobody currently involved in the scheme dares to challenge if for fear that they will be personally tainted for their involvement in the absurdly corrupt scheme.

The judges are mandated to take direct state policy vindication action against the federal rights of litigants before their court and then to rubber stamp their own political vindication actions to be constitutional against any challenges the litigants can possibly raise in the state courts. Every appellate court judge in the state previously complied with this legislative command directing state court judges to exercise judicial authority in a manner that directly violates their Supremacy Clause oath.

The Mississippi trial court judges are judging their own political actions to be legal under state law and to be constitutional under federal law. The Mississippi Court of Appeals and the Mississippi Supreme Court hold it permissible for trial court judges to judge their own political actions but only in this class of cases for this class of litigant.

The federal district court judge in this case permitted Mississippi trial court judges to judge their own political actions in child custody suits between fit parents under a blatant and open marital discrimination scheme in which eve federal judges partake in the marital discrimination even though the scheme irreparably injures every child who is ever subject to the scheme.

The federal rights of parents and children are de facto terminated by presumption upon the mere filing of the child custody petition. The moment the petition is filed, the state irreparably injures parents and children by terminating their First Amendment protected speech and associational rights which from that instant forward get replaced with a limited state license to speak and associate as a close family and that license is subject to nothing more than the mere viewpoint of a sole state official until the children reach the age of majority, 21 in Mississippi, and that sole state censor also gets to adjudicate the constitutionality of his or her own censorship orders.

If one parent files a child custody petition, the other parent is forced to seek the state's permission to speak with, associate with, worship with, share family privacy with, and make parental decisions for their minor child. That permission is granted under "broad" discretion justified only by a substantial state interest. That permission is never subject to competent judicial review in a state court. Because the state censor is a state court judge, federal court rules and practices serve to ensure that the state censorship actions can never be challenged in a federal court.

All other people, when subjected to state censorship, can petition a federal district court and get relief from that censorship. This class of litigant can NOT receive federal

relief because the federal courts fail to properly apply functional analysis, Imbler
Approach, to determine if the judge was acting politically or judicially.

There are a great many reasons for this, 2,000 years of marital discrimination bias
is a large reason. Religious beliefs regarding marriage as the source of parental authority
are a major factor. Money is a huge factor as there are tens of billions of dollars funneled
through this nationwide system every year and many tens of thousands of individuals
receive significant revenue from this system. One company in Kansas asserts on their
website that they performed 3,190 family assessments in 2015 for a cost of $1,500. 00
each.

That works out to $4,785,000.00 in one state, in one year, for just one charge that
state courts impose on divorced and unmarried parents but NOT on married parents.
This is exactly the type of family assessment that Justin challenged on constitutional
grounds, a challenge that has resulted in a 6 year prison sentence for daring to assert
federal fundamental rights in a rigged system where the person ordering the family
assessment is the same person who is conducting the state's political investigation
against the individuals being assessed, who issued search and seizure warrants to
further his own investigation, and who declared those actions to be consistent with
federal constitutional mandate.

Justin is a political prisoner. He is imprisoned for asserting his fundamental rights
against a compelled political investigation into his fitness as a parent under presumed
state authority initiated by the mere filing of a child custody petition by the Mother.

It is true that the state political actor who imprisoned Justin is also a state court
judge, but that judge was NOT in any manner conducting litigation of the rights of the

litigants before the court. That judge was litigating the best interests of the nonlitigant child who lacked jurisdiction to have his interests litigated by a court and who is now suing the judge for litigating his interests without requiring that standing be demonstrated.

The state court judge is applying the judicial contempt power to punish Justin for challenging the state court judge's political policy vindication actions taken against Justin where Justin was a litigant before the Court. There is NO available means other than this habeas petition for Justin to receive relief from this political imprisonment other than to give up and permit his rights to be violated in furtherance of a facially invalid state statute.

Justin has been deprived of access to any law library of any kind for these six years and has been unable to adequately defend himself except through the help of third parties.

This Court must recognize that family law provides a very large and easy revenue stream for attorneys and because little actual law is practiced, is a haven for the least competent attorneys. If an attorney were to take Justin's case and win, then that attorney would be depriving himself and all of his peers of a large revenue stream leaving them all to fight over what is left over. Even the best-intentioned attorneys quickly tire of swimming upstream against this rigged system.

Under the best interests of the child standard, the judicial viewpoint standard, any attorney who angers a state court judge can easily find themselves losing every family law case brought before that judge where it is practically impossible to challenge the

broad discretion to punish wayward attorneys who actually try to perform their fiduciary duties to their clients.

Under this scheme, Justin's property was also subject to ongoing monthly seizure where he was ordered to pay a percentage of his income to the mother as child support, thus subjecting Justin to contempt punishment as well as criminal punishments for failing to pay this debt.

This order results in Justin being held to a standard of childcare that is very different from the standard applied to the mother and that is very different from that applied to parents who remain married to each other. It also reclassifies the child as a child benefiting from two different standards of childcare where the children of parents married to each other receive a lesser entitlement. These classifications are justified by nothing more than marital status or a change in marital status resulting in arbitrary marital discrimination.

Such punishment has been resoundingly declared to be invidious discrimination under rational basis analysis that visits loss of fundamental rights upon the child in order to express the state's disfavor with the parents' marital choices. The Supreme Court has declared such action to be illogical and unjust, see Mathews v. Lucas, 427 US 495, 505 (1976):

> The Court recognized in Weber that visiting condemnation upon the child in order to express society's disapproval of the parents' liaisons is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent. But where the law is arbitrary in such a way, we have had no difficulty in

finding the discrimination impermissible on less demanding standards than those advocated here.)

See also the Court's cases concerning punishing children for the marital choices of their parents under the illegitimacy cases of the mid 1970's:

> Levy v. Louisiana, 391 US 68, 71, 72 (1968), Weber v. Aetna Casualty & Surety Co., 406 US 164, 175 (1972), Parham v. Hughes, 441 US 347, 358 (1979), Pickett v. Brown, 462 US 1, 8, 9 (1983), Cleburne v. Cleburne Living Center, Inc., 473 US 432, 453 (1985), Jimenez v. Weinberger, 417 US 628, 637 (1974), Mills v. Habluetzel, 456 US 91, 92, 93 (1982), Gomez v. Perez, 409 US 535 (1973).

The Supreme Court has also declared that the state has NO legitimate interest in depriving children of rights to their fit parents, see <u>Stanley v. Illinois</u>, 405 US 645, 652, 653 (1972):

> We observe that the State registers no gain towards its declared goals when it separates children from the custody of fit parents. Indeed, if Stanley is a fit father, the State spites its own articulated goals when it needlessly separates him from his family.

Parental rights are individual rights. They are established individually through means that differ between the sexes. The child's rights to both parents are also individual rights. None of these rights can be made dependent upon a marriage between the child's parents.

If the rights are individual and can have NO relation to a marriage between the child's parents, then how is it possible for the state to de facto terminate parent and child rights upon divorce?

There is NO legal basis for depriving children of fit parents or fit parents of their children as punishment for divorce. NONE. Divorce is otherwise lawful, and it is an exercise of First Amendment protected close family speech and association rights, the

right NOT to speak and NOT to associate further in a marital relationship, see <u>Janus v.</u> <u>AMERICAN FEDERATION OF STATE</u>, 138 S. Ct. 2448, 2463 (2018):

> The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech. We have held time and again that freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all."... "Freedom of association . . . plainly presupposes a freedom not to associate"

The state of Mississippi is subjecting Justin and his child to unconstitutional punishment for the divorce. Part of that punishment is forcing Justin to prove his fitness as a parent and then jailing him for asserting that the state has NO legitimate authority to compel him to prove his fitness as a parent just because he and his child's mother divorced one another.

Justin chose to no longer speak and associate with his child's mother in a marital relationship and Justin was punished. Justin chose NOT to be compelled to speak in order to prove his fitness as a parent and Justin was punished. Not only was Justin punished but his child was punished with loss of his father.

All of this is justified by nothing more than the viewpoint of a sole state official that imprisoning Justin for six years was in his child's best interests. There is absolutely NOTHING even remotely constitutional about Justin's imprisonment.

The federal district court judge certainly is capable of understanding this, but that judge has a serious conflict of interest. If what Justin is asserting and what the Supreme Court has held is true, then the federal district court judge has a lot of bad judicial behavior to account for. His safest course of action is to do exactly nothing and hope that the state court judge ends this before the federal district court judge is compelled to

commit additional overt bad behavior to protect the corrupt system in which he took part.

Reason for Granting the Writ

*There is a massive state judicial corruption bubble primed to explode and there is an extreme likelihood that when it bursts it will have wide ranging negative impacts on the credibility of the federal judiciary unless this Court acts to contain the damage now.*

A writ of mandamus is properly granted to correct the "usurpation of judicial power" and to correct the "clear abuse of discretion." IN RE PARISH, 81 F. 4th 403, 409 (5th Circuit 2023). The office of the writ of mandamus is properly to confine the lower court to the sphere of its discretionary power, in this case by the congressional jurisdictional mandate of 28 U. S. C. §455. Will v. United States, 389 US 90, 102 (1967). Specific to compliance with the jurisdictional mandate in this case, the writ has been applied to "Address delay in ruling on pending petition." In re US ex rel. Drummond, 886 F. 3d 448 (5th Circuit 2018). "The peremptory writ of mandamus has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Will v. United States, 389 US 90 (1967).

The district courts delay in this case has amounted to a denial of Justin's right to have his motions meaningfully considered, a failure of the district court to exercise its duty to ensure its own jurisdiction, a failure of the district court to confine itself "to a lawful exercise of its prescribed jurisdiction," and a failure of the district court to properly exercise the jurisdiction it does have.[1]

---

[1] At this point, the only jurisdiction the district court currently has is for the judge to recuse.

During the past five months, the district court should have decided Justin's Motion raising a 28 U. S. C. §455 challenge to the district court judge's prior extensive participation in establishing and defending the state scheme to which Justin is raising a direct jurisdictional and constitutional challenge.

Success in this challenge would demonstrate that state courts lack judicial jurisdiction to adjudicate challenges to their own political policy vindication actions taken under the state scheme and that the scheme systematically deprives individuals of fundamentally fair judicial process, deprives individuals of substantive due process protections for fundamental rights, and impermissibly punishes these individuals for otherwise lawful and constitutionally protected marital choices, over which they may have had NO control, as an impermissible form of marital discrimination.

Given that Justin's challenge is NOT simply that the state courts are making an understandable error but that the state court judges are systematically conspiring with the legislature, with attorneys, with those who receive revenue from the process, and with some litigants to deprive an entire class of individuals of any possibility of vindicating their federal rights in a state court, and to create nearly insurmountable obstacles to vindication of those federal rights in federal courts where the central role essential to the success of the unlawful scheme is the role played by the state court judges.

The district court judge served ten-years in the state legislature establishing the civil law codes of which Justin complains and served another four-rears as a state court judge sitting on the state's supreme court upholding the civil law codes of which Justin complains.

Justin complains of a systematic issue in the federal courts whereby federal judges who were previously state court judges participating in this Mississippi scheme and similar schemes existing in all fifty states and in every federal territory are establishing systemic marital discrimination in application of federal rules to access federal courts through systemic misapplication of those rules and establishing controlling precedent in error that results in denying this class of litigant a meaningful opportunity to have their federal rights vindicated in a federal court.

Once again, the indispensable role in this scheme is the state court judge who by asserting the affirmative defense of judicial immunity, impermissibly granted by state titled rather than by functional exercise of state authority, creates a wall of judicial immunity that protects the state's civil law policy interests and the state's administration, regulation, and enforcement of those civil law policy interests from constitutional review in a federal court.

This is made possible by the simple fact that the legislatures in all fifty states and in each federal territory delegate sole political jurisdiction to administer, regulate, and enforce its civil law policy interests for any given set of individuals, covering the same subject matter, under a unique set of facts and circumstances to the same sole government official to whom the legislature has delegated judicial jurisdiction to adjudicate challenges by the effected parties to the constitutionality of the state's civil law scheme.

In short, the state legislature delegates sole authority to take political action to a single state judge and then tasks that state judge with judging his or her own political policy actions under judicial standards. The states have established a systemic policy

whereby judges judge their own political actions and the state's political interests always prevail against the federal rights of litigants and nonlitigant children alike.

Justin is seeking to penetrate this well-established and wrongly established judicial immunity wall of protection in the federal courts that is preventing litigants from challenging the state's civil law policies and their vindication by state actors. It is clearly reasonable to believe that the district court judge who spent fourteen years establishing and defending the state's civil law scheme can NOT be sufficiently impartial regarding this wall of protection to establish the appearance of impartiality mandated by federal statute and by the federal constitution.

The district court's more than five-month delay in responding to the motion to recuse and the district court's complete failure to respond to anything that Justin has filed with the district court in and of itself is sufficient to raise credible concerns regarding the district court judge's ability to be impartial.

By comparison in a district court under the Ninth Circuit where another litigant is similarly seeking habeas corpus review in a federal district court, his habeas corpus petition produced response from the Magistrate a mere 48 hours after a district court judge was assigned. Within a few weeks, the district court judge, previously a state court judge in California, interrupted the established process and issued a summary dismissal declaring that litigants in this class have NO access to habeas corpus relief and NO access to 42 U. S. C. 42 U. S. C. 1983 relief in the federal district courts of the Ninth Circuit.

While there is a stark disparity in the means by which the Mississippi district court and the California district court impermissibly acted to deprive litigants of their

**Title Page**

## Statement of Related Cases

Justin's son is now eighteen-years old, still a minor under state law, but an adult under federal law. Several months before his eighteenth birthday, he filed a 42 U. S. C. 42 U. S. C. 1983 suit against the judge seeking declaratory relief holding that he had never established standing to have his interests, best or otherwise, litigated by the state and that the manner in which the state asserted his best interests resulted in irreparable injury to him because the state deprived him of his fit father without jurisdiction, in fundamentally unfair judicial proceedings, without providing any substantive guarantees for his rights, and did so in a manner that punished him for the marital choices of his parents.

This suit was dismissed because he was a minor acting pro se. Although the district court refused to protect his rights in any way because he was technically a minor, the district court was all too happy to keep his money.

Shortly after he turned eighteen years old, he refiled the same suit and that suit is in the preliminary stages where attempts to serve the state court judge are ongoing and he is facing difficulty in getting the state judge served even though federal rules require government officials to waive formal service.

Existing precedent from the Fifth Circuit holds that state court judges in family law matters cannot be sued, leaving no possibility of vindicating federal rights in federal courts. The Fifth Circuit holds, in an act of marital discrimination, that state courts are proper venues in which to vindicate federal rights even where those state court judges absolutely refuse to even recognize the federal causes of action.

The likelihood of success in this suit is NOT high, but it is relevant in that a child under state law is suing to have it declared that the state court is acting contrary to his best interests by depriving him of his fit father.

<u>Relief Sought</u>

Petitioner Justin McPhail respectfully requests that the Court grant this petition for writ of mandamus and direct the district court to comply with 28 U. S. C. §455 and recuse accordingly.

<u>Issues Presented</u>

(1) Whether this Court should direct the district court to act upon Justin's §455 Motion requesting that the judge of the district court recuse because his close connections with the Mississippi statutes from his ten-years serving as a congressman in Mississippi and from upholding those statutes during his four-years as a Mississippi Supreme Court justice and the potential reputational damage he would suffer should Justin prevail in his challenge to the state's family code and the unconstitutional manner in which Mississippi court judges simultaneously exercise political and judicial jurisdiction over the same parties and the same subject matter under the same facts and circumstances

(2) Whether this Court should remind the district court that state judges may NOT be permitted to judge their own political policy vindication actions by Supremacy Clause preemptive command.

<u>Facts Necessary to Understand Petition</u>
*<u>Six years imprisoned under the state's interest of securing the best interests of a child against his fit father against the father's fundamental right to be presumed fit and be presumed to make choices that are best for his child and to be free from compelled search, seizure, and speech that is unreasonable and unjustified is enough time to serve as a political prisoner.</u>*

Justin has been in jail now for over six-years for no other reason than that the state of Mississippi asserts an interest in protecting Justin's 18-year-old minor child's best interests as against his fit father's fundamental parental rights under a state scheme that punishes children and parents for the otherwise lawful and constitutionally protected choices of the parents.

Justin has filed a habeas corpus petition in the federal district court and over four-months ago filed a motion asking the district court judge to recuse because his previous experience as a state legislator and as a state supreme court justice make it reasonable to conclude that the judge can NOT meet the standard of impartiality required under 28 U. S. C. §455 when the result of Justin's prevailing in his challenges to manifest injustice created by the state scheme would bring discredit to the district court judge for his service in support of the scheme over a fourteen-year period.

Justin is raising jurisdictional challenges against the state court judge that nullify the contempt charges. Justin is also asserting that the systemic manner in which state court judges in Mississippi violate jurisdictional rules prevents Justin as well as all other

parents and children subject to the civil law statute from ever being able to vindicate their federal rights in either a state or federal court.

Contrary to the state's assertions, Justin can NOT be made to prove his fitness as a parent simply because Justin divorced his son's mother. Contrary to the state's assertions, Justin does NOT hold the keys to his release because the keys to his release require that he waive his fundamental rights to be free from a broad exploratory search of his mind, to be free from the seizure involved in that compelled search, and to be free NOT to speak against his interests to a state therapist where he is required to prove his fitness as a parent to the state's investigator.

The federal district judge spent ten-years in the Mississippi Legislature passing many statutes including those in the Mississippi family law code that Justin in challenging and it is impossible to definitively discern the judge's ties to any particular family law statute. Further, the federal district court judge spent four years as a Mississippi Supreme Court Justice where he upheld statutes within the Mississippi family law code that Justin is challenging. Should Justin prevail in his numerous and very basic legal challenges to these statutes it will become unavoidably clear that state judges have rigged the system from top to bottom where the federal district judge spent four-years at the top of that system.

The state of Mississippi family law code delegates to a sole state official political executive authority to administer, regulate, and enforce that code against a particular family of individuals regarding the same subject matter under the same set of facts and under the same conditions. That civil law code then delegates judicial authority to hear challenges to the state's policy interests and challenges to the administration, regulation, and enforcement of those policy interests to the same sole state official.

This sole state official is granted presumptive unbridled discretion to impose viewpoint-based prior restraints against close family members justified by a merely substantial state interest that can reach the level of absolute restraint against all speech and association of close family members. Then, when those family members seek to raise First Amendment challenges to that presumptive authority to impose viewpoint-based prior restraints, they must bring that challenge to the very state official who asserted their own authority to impose that prior restraint. The judge who issued the prior restraint now sits in judgement of the constitutionality of that prior restraint.

This scheme clearly violates well-established law in Mississippi, see Reeves v. Gunn, 307 So. 3d 436, 444 (Miss: 2020):

> Under Mississippi's clear separation of powers, to the judiciary belongs judicial power and no legislative or executive power. See Miss. Const. Art. 1, §§ 1 and 2.

See also In re Hooker, 87 So. 3d 401, 405 (Miss: 2012):

18. Despite the Marbury Court's declaration of its "emphatic" duty to interpret the Constitution, Chief Justice Marshall cautioned:

> The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.

Under this doctrine, the United States Supreme Court—as well as this Court—has refused to exercise jurisdiction over a matter when there was a "textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it...."[8] This principle has carried forward.

See also 5K FARMS v. MISSISSIPPI STATE TAX COM'N, 94 So. 3d 291, 296 (Miss: Court of Appeals 2011):

> "We believe no citation of authority is needed for the universally accepted principle that if there be a clash between the edicts of the Constitution and the legislative enactment, the latter must yield." Newell, 308 So.2d at 77. "The rule is well settled that the judicial power cannot be taken away by legislative action. Nor may the Legislature regulate the judicial discretion or judgment that is vested in the courts." 16A Am.Jur.2d Constitutional Law § 286, at 209-10 (1998).

See also Wimley v. Reid, 991 So. 2d 135, 137, 138 (Miss: 2008):

Separation of powers.

9. In her supplemental briefing, Wimley sets forth the following excellent synopsis of this Court's constitutional authority:

> Articles 1 and 6 of the Mississippi Constitution of 1890 address the role of the judiciary and the constitutional powers bestowed upon it. In each of these articles the drafters and those that have revised the Constitution since that time set forth an unambiguous pronouncement of the authority vested in the Mississippi Supreme Court.

> The Separation of Powers Doctrine, memorialized in Miss. Const., Art. I, §§ 1 and 2, was meant to prescribe limitations on the power of each of the three co-equal governmental branches. The Doctrine serves to ensure that each body refrains from encroaching upon the authority of the other. The legislative history of the Constitution illustrates that the drafters of the 1890 version intentionally deleted a single phrase from the 1832 and 1869 Constitutions that questioned the strict mandate of

the separation of powers. See Alexander v. State By and Through Allain, 441 So.2d 1329 (Miss.1983).

10. Wimley also points us to the following quote from the United States Supreme Court:

> This separation is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital ... namely, to preclude a commingling of these essentially different powers of government in the same hands.... If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows ... that each 138*138 department should be kept completely independent of the others.

O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356, (1933).

Needless to say, in child custody suits between fit parents the standards are very different, broad discretion and a merely substantial state interest is always held to provide sufficient authority to impose viewpoint-based prior restraints against this class of individual. When judges judge themselves, what other outcome could there be?

The Mississippi family law code regulates fundamental First Amendment protected interest and authorizes viewpoint-based prior restraints all of which is presumptively, unconstitutional under federal law which mandates that a state official must appear and provide evidence through testimony to overcome this presumption of unconstitutionality.

The only individual to whom the Mississippi delegates any political authority to provide evidence through testimony regarding whether the state's burden has been met is the judge who is deciding if the burden has been met. The burden has never NOT been met even though no judge may submit testimony in his own court. It is literally impossible for Mississippi to ever overcome the federal burden of proof necessary to regulate fundamental rights in parent vs parent child custody suits.

This is how very basic and fundamental are the failures of the state's scheme. The scheme has become so very bad that nobody currently involved in the scheme dares to challenge if for fear that they will be personally tainted for their involvement in the absurdly corrupt scheme.

The judges are mandated to take direct state policy vindication action against the federal rights of litigants before their court and then to rubber stamp their own political vindication actions to be constitutional against any challenges the litigants can possibly raise in the state courts. Every appellate court judge in the state, previously complied with this legislative command directing state court judges to exercise judicial authority in a manner that directly violates their Supremacy Clause oath.

The Mississippi trial court judges are judging their own political actions to be legal under state law and to be constitutional under federal law. The Mississippi Court of Appeals and the Mississippi Supreme Court hold it permissible for trial court judges to judge their own political actions but only in this class of cases for this class of litigant. The federal district court judge in this case permitted Mississippi trial court judges to judge their own political actions in child custody suits between fit parents under a blatant and open marital discrimination scheme in which eve federal judges partake in the marital discrimination even though the scheme irreparably injures every child who is ever subject to the scheme.

The federal rights of parents and children are de facto terminated by presumption upon the mere filing of the child custody petition. The moment the petition is filed, the state irreparably injures parents and children by terminating their First Amendment protected speech and associational rights which from that instant forward get replaced with a limited state license to speak and associate as a close family and that license is subject to nothing more than the mere viewpoint of a sole state official until the children reach the age of majority, 21 in Mississippi, and that sole state censor also gets to adjudicate the constitutionality of his or her own censorship orders.

If one parent files a child custody petition, the other parent is forced to seek the state's permission to speak with, associate with, worship with, share family privacy with, and make parental decisions for their minor child. That permission is granted under "broad" discretion justified only by a substantial state interest. That permission is never subject to competent judicial review in a state court. Because the state censor is a state court judge, federal court rules and practices serve to ensure that the state censorship actions can never be challenged in a federal court.

All other people, when subjected to state censorship, can petition a federal district court and get relief from that censorship. This class of litigant can NOT receive federal relief because the federal courts fail to properly apply functional analysis, Imbler Approach, to determine if the judge was acting politically or judicially.

There are a great many reasons for this, 2,000 years of marital discrimination bias is a large reason. Religious beliefs regarding marriage as the source of parental authority are a major factor. Money is a huge factor as there are tens of billions of dollars funneled through this nationwide system every year and many tens of thousands of individuals receive significant revenue from this system. One company in Kansas asserts on their website that they performed 3,190 family assessments in 2015 for a cost of $1,500. 00 each.

That works out to $4,785,000.00 in one state, in one year, for just one charge that state courts impose on divorced and unmarried parents but NOT on married parents. This is exactly the type of family assessment that Justin challenged on constitutional grounds, a challenge that has resulted in a 6 year prison sentence for daring to assert federal fundamental rights in a rigged system where the person ordering the family assessment is the same person who is conducting the state's political investigation

against the individuals being assessed, who issued search and seizure warrants to further his own investigation, and who declared those actions to be consistent with federal constitutional mandate.

Justin is a political prisoner. He is imprisoned for asserting his fundamental rights against a compelled political investigation into his fitness as a parent under presumed state authority initiated by the mere filing of a child custody petition by the Mother.

It is true that the state political actor who imprisoned Justin is also a state court judge, but that judge was NOT in any manner conducting litigation of the rights of the litigants before the court. That judge was litigating the best interests of the nonlitigant child who lacked jurisdiction to have his interests litigated by a court and who is now suing the judge for litigating his interests without requiring that standing be demonstrated.

The state court judge is applying the judicial contempt power to punish Justin for challenging the state court judge's political policy vindication actions taken against Justin where Justin was a litigant before the Court. There is NO available means other than this habeas petition for Justin to receive relief from this political imprisonment other than to give up and permit his rights to be violated in furtherance of a facially invalid state statute.

Justin has been deprived of access to any law library of any kind for these six years and has been unable to adequately defend himself except through the help of third parties.

This Court must recognize that family law provides a very large and easy revenue stream for attorneys and because little actual law is practiced, is a haven for the least competent attorneys. If an attorney were to take Justin's case and win, then that attorney would be depriving himself and all of his peers of a large revenue stream leaving them all to fight over what is left over. Even the best-intentioned attorneys quickly tire of swimming upstream against this rigged system.

Under the best interests of the child standard, the judicial viewpoint standard, any attorney who angers a state court judge can easily find themselves losing every family law case brought before that judge where it is practically impossible to challenge the broad discretion to punish wayward attorneys who actually try to perform their fiduciary duties to their clients.

Under this scheme, Justin's property was also subject to ongoing monthly seizure where he was ordered to pay a percentage of his income to the mother as child support, thus subjecting Justin to contempt punishment as well as criminal punishments for failing to pay this debt.

This order results in Justin being held to a standard of childcare that is very different from the standard applied to the mother and that is very different from that applied to parents who remain married to each other. It also reclassifies the child as a

child benefiting from two different standards of childcare where the children of parents married to each other receive a lesser entitlement. These classifications are justified by nothing more than marital status or a change in marital status resulting in arbitrary marital discrimination.

Such punishment has been resoundingly declared to be invidious discrimination under rational basis analysis that visits loss of fundamental rights upon the child in order to express the state's disfavor with the parents' marital choices. The Supreme Court has declared such action to be illogical and unjust, see <u>Mathews v. Lucas</u>, 427 US 495, 505 (1976):

> The Court recognized in Weber that visiting condemnation upon the child in order to express society's disapproval of the parents' liaisons is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent. But where the law is arbitrary in such a way, we have had no difficulty in finding the discrimination impermissible on less demanding standards than those advocated here.)

See also the Court's cases concerning punishing children for the marital choices of their parents under the illegitimacy cases of the mid 1970's:

> Levy v. Louisiana, 391 US 68, 71, 72 (1968), Weber v. Aetna Casualty & Surety Co., 406 US 164, 175 (1972), Parham v. Hughes, 441 US 347, 358 (1979), Pickett v. Brown, 462 US 1, 8, 9 (1983), Cleburne v. Cleburne Living Center, Inc., 473 US 432, 453 (1985), Jimenez v. Weinberger, 417 US 628, 637 (1974), Mills v. Habluetzel, 456 US 91, 92, 93 (1982), Gomez v. Perez, 409 US 535 (1973).

The Supreme Court has also declared that the state has NO legitimate interest in depriving children of rights to their fit parents, see <u>Stanley v. Illinois</u>, 405 US 645, 652, 653 (1972):

> We observe that the State registers no gain towards its declared goals when it separates children from the custody of fit parents. Indeed, if Stanley is a fit father, the State spites its own articulated goals when it needlessly separates him from his family.

Parental rights are individual rights. They are established individually through means that differ between the sexes. The child's rights to both parents are also individual rights. None of these rights can be made dependent upon a marriage between the child's parents.

If the rights are individual and can have NO relation to a marriage between the child's parents then how is it possible for the state to de facto terminate parent and child rights upon divorce?

There is NO legal basis for depriving children of fit parents or fit parents of their children as punishment for divorce. NONE. Divorce is otherwise lawful, and it is an exercise of First Amendment protected close family speech and association rights, the right NOT to speak and NOT to associate further in a marital relationship, see Janus v. AMERICAN FEDERATION OF STATE, 138 S. Ct. 2448, 2463 (2018):

> The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech. We have held time and again that freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all."... "Freedom of association . . . plainly presupposes a freedom not to associate"

The state of Mississippi is subjecting Justin and his child to unconstitutional punishment for the divorce. Part of that punishment is forcing Justin to prove his fitness as a parent and then jailing him for asserting that the state has NO legitimate authority to compel him to prove his fitness as a parent just because he and his child's mother divorced one another.

Justin chose to no longer speak and associate with his child's mother in a marital relationship and Justin was punished. Justin chose NOT to be compelled to speak in order to prove his fitness as a parent and Justin was punished. Not only was Justin punished but his child was punished with loss of his father.

All of this is justified by nothing more than the viewpoint of a sole state official that imprisoning Justin for six years was in his child's best interests. There is absolutely NOTHING even remotely constitutional about Justin's imprisonment.

The federal district court judge certainly is capable of understanding this, but that judge has a serious conflict of interest. If what Justin is asserting and what the Supreme Court has held is true, then the federal district court judge has a lot of bad judicial behavior to account for. His safest course of action is to do exactly nothing and hope that the state court judge ends this before the federal district court judge is compelled to commit additional overt bad behavior to protect the corrupt system in which he took part.

<u>Reason for Granting the Writ</u>
*There is a massive state judicial corruption bubble primed to explode and there is an extreme likelihood that when it bursts it will have wide ranging negative impacts on the credibility of the federal judiciary unless this Court acts to contain the damage now.*

A writ of mandamus is properly granted to correct the "usurpation of judicial power" and to correct the "clear abuse of discretion." <u>IN RE PARISH</u>, 81 F. 4th 403, 409

(5th Circuit 2023). The office of the writ of mandamus is properly to confine the lower court to the sphere of its discretionary power, in this case by the congressional jurisdictional mandate of 28 U. S. C. §455. <u>Will v. United States</u>, 389 US 90, 102 (1967). Specific to compliance with the jurisdictional mandate in this case, the writ has been applied to "Address delay in ruling on pending petition." <u>In re US ex rel. Drummond</u>, 886 F. 3d 448 (5th Circuit 2018). "The peremptory writ of mandamus has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." <u>Will v. United States</u>, 389 US 90 (1967).

The district courts delay in this case has amounted to a denial of Justin's right to have his motions meaningfully considered, a failure of the district court to exercise its duty to ensure its own jurisdiction, a failure of the district court to confine itself "to a lawful exercise of its prescribed jurisdiction," and a failure of the district court to properly exercise the jurisdiction it does have.[1]

During the past five months, the district court should have decided Justin's Motion raising a 28 U. S. C. §455 challenge to the district court judge's prior extensive participation in establishing and defending the state scheme to which Justin is raising a direct jurisdictional and constitutional challenge.

Success in this challenge would demonstrate that state courts lack judicial jurisdiction to adjudicate challenges to their own political policy vindication actions taken under the state scheme and that the scheme systematically deprives individuals of fundamentally fair judicial process, deprives individuals of substantive due process protections for fundamental rights, and impermissibly punishes these individuals for otherwise lawful and constitutionally protected marital choices, over which they may have had NO control, as an impermissible form of marital discrimination.

Given that Justin's challenge is NOT simply that the state courts are making an understandable error but that the state court judges are systematically conspiring with the legislature, with attorneys, with those who receive revenue from the process, and with some litigants to deprive an entire class of individuals of any possibility of vindicating their federal rights in a state court, and to create nearly insurmountable obstacles to vindication of those federal rights in federal courts where the central role essential to the success of the unlawful scheme is the role played by the state court judges.

The district court judge served ten-years in the state legislature establishing the civil law codes of which Justin complains and served another four-rears as a state court judge sitting on the state's supreme court upholding the civil law codes of which Justin complains.

---

[1] At this point, the only jurisdiction the district court currently has is for the judge to recuse.

Justin complains of a systematic issue in the federal courts whereby federal judges who were previously state court judges participating in this Mississippi scheme and similar schemes existing in all fifty states and in every federal territory are establishing systemic marital discrimination in application of federal rules to access federal courts through systemic misapplication of those rules and establishing controlling precedent in error that results in denying this class of litigant a meaningful opportunity to have their federal rights vindicated in a federal court.

Once again, the indispensable role in this scheme is the state court judge who by asserting the affirmative defense of judicial immunity, impermissibly granted by state titled rather than by functional exercise of state authority, creates a wall of judicial immunity that protects the state's civil law policy interests and the state's administration, regulation, and enforcement of those civil law policy interests from constitutional review in a federal court.

This is made possible by the simple fact that the legislatures in all fifty states and in each federal territory delegate sole political jurisdiction to administer, regulate, and enforce its civil law policy interests for any given set of individuals, covering the same subject matter, under a unique set of facts and circumstances to the same sole government official to whom the legislature has delegated judicial jurisdiction to adjudicate challenges by the effected parties to the constitutionality of the state's civil law scheme.

In short, the state legislature delegates sole authority to take political action to a single state judge and then tasks that state judge with judging his or her own political policy actions under judicial standards. The states have established a systemic policy whereby judges judge their own political actions and the state's political interests always prevail against the federal rights of litigants and nonlitigant children alike.

Justin is seeking to penetrate this well-established and wrongly established judicial immunity wall of protection in the federal courts that is preventing litigants from challenging the state's civil law policies and their vindication by state actors. It is clearly reasonable to believe that the district court judge who spent fourteen years establishing and defending the state's civil law scheme can NOT be sufficiently impartial regarding this wall of protection to establish the appearance of impartiality mandated by federal statute and by the federal constitution.

The district court's more than five-month delay in responding to the motion to recuse and the district court's complete failure to respond to anything that Justin has filed with the district court in and of itself is sufficient to raise credible concerns regarding the district court judge's ability to be impartial.

By comparison in a district court under the Ninth Circuit where another litigant is similarly seeking habeas corpus review in a federal district court, his habeas corpus petition produced response from the Magistrate a mere 48 hours after a district court judge was assigned. Within a few weeks, the district court judge, previously a state court

judge in California, interrupted the established process and issued a summary dismissal declaring that litigants in this class have NO access to habeas corpus relief and NO access to 42 U. S. C. 42 U. S. C. 1983 relief in the federal district courts of the Ninth Circuit.

While there is a stark disparity in the means by which the Mississippi district court and the California district court impermissibly acted to deprive litigants of their fundamental right to vindicate their federal rights in a federal court, the wall remains solid without even a crack at this point.

Justin contends that the jurisdictional mandate of 28 U. S. C. §455 is crystal clear regarding reasonable challenges to a judge's ability to remain properly impartial, contends that federal law mandates that state and federal judges must remain neutral, impartial, and independent of the government policy interests being challenged, and contends that the Article III mandate that judges must establish and maintain their jurisdictional authority sua sponte are clearly violated by the actions of the district court.

*Exceptional Circumstances Exist*

*The state has coopted the judicial contempt power to enforce its civil law
policy interests against individuals in a manner that imposes extreme
burdens on anyone who challenges the state's enforcement of its civil law.*

Justin is imprisoned on contempt charges. The nature of the contempt charges combined with the state trial court's "broad discretion" to infringe the fundamental rights of litigants justified by the state's mere "substantial" interest in pursuing a child's best interests has been asserted by the state to enable sweeping violations of fundamental rights upon nothing more than the mere unreviewable viewpoint of a sole state official.

Here, the state official, a state trial court judge, is compelling Justin to waive fundamental rights and prove his fitness as a parent, where he is already a natural fit parent with fully vested federal constitutional parental rights and is therefore entitled to federal constitutional protections against being compelled to prove that which the state must presume by constitutional mandate.

Having been incarcerated for over six years with NO access to a law library, it is impossible for Justin to receive a fair trial, even if the state scheme permitted fair trials. If Justin's only route to receive constitutional review of his extended incarceration is to submit to a fundamentally unfair show trial, then Justin asks this Court to make a holding to that effect as its reason for denying this mandamus petition.

The state's appellate court judges were all previously state trial court judges who did exactly what Justin is challenging. They can NOT be properly impartial.

It is NOT entirely clear that a final trial would result in Justin's release from incarceration because state child custody courts claim continuing jurisdiction until the

child reaches the age of majority, which is 21 in Mississippi. It is entirely conceivable and likely, given the state's powerful interest in preventing Justin from litigating his challenges to the illegal state scheme in a federal court, that Justin's incarceration would be continued until his son reaches the age of 21 for the specific purpose of frustrating Justin's ability to petition a federal court for civil rights relief.

Justin asserts that the purpose for which he has been incarcerated for so long is to prevent him from defending himself and as retaliation by powerful interests for daring to challenge their unbridled authority. The right to petition a court is a First Amendment protected fundamental right. Justin's prolonged incarceration is intended to frustrate the exercise of his First Amendment rights to challenge an illegal state scheme, that financially benefits a great many people, and the imprisonment is effectively a First Amendment retaliation action against the challenges Justin has already raised against the scheme.

Of additional note in this case, Justin has been confined for more than six years without access to a law library and without benefit of counsel which amounts to a denial of his right to defend himself against the state's unlawful actions. Justin is at the mercy of others for their assistance in defending himself, and that insufficient guarantee of his right to mount a defense against his incarceration should have resulted in Justin's release a long time ago. TBD: add the law library references.

*Pervasive Bias*

*Federal law, Title IV-D, conveys a massive pecuniary interest to the state judiciary to irreparably injure children so that Social Security can unconstitutionally save money by having the states perform the unconstitutional violation of rights necessary under the scheme.*

Title IV-D alone provides billions of federal dollars to states every year predicated upon the amount of child support ordered and the amount of child support collected in child custody suits. The current justifications for child support statutes, if they are justified at all, is that an unequal "grant" of custody over a child by a state court necessitates one parent paying the other parent. Therefore, the only way to maximize Title IV-D payments to the state is to consistently award unequal custody.

The core problem with this is that natural parents already have fully vested federally protected natural parental rights that fully encompass the state concept of legal and physical custody over the child. The only permissible way for a state court judge to "grant" fundamental natural rights already held by a parent is if those already held rights have been terminated by statutory authority or by judicial presumption.

It is only after seizing complete dominion over the child and de facto terminating the fundamental rights of both parents and the child to one another, that the state court in this case gained any state statutory authority to "grant" some limited portion of those natural rights back to a parent as a limited parental license subject only to the arbitrary viewpoint of a sole state official as to what is in the child's best interests.

Establishment of what is best follows a clear pattern. The court investigates each parents' otherwise lawful and constitutionally protected child-rearing choices regarding matters of conscience in child-rearing and based upon that court's opinion about those parental choices the court arbitrarily chooses the "best" parent and grants to them the preferred custody license, leaving the less desirable custody license to the parent adjudged to be "less than best." The licenses are issued in the form of prior restraints on speech and association as deemed to be in the child's best interest in the opinion of a sole state official.

As Justin has attempted to explain herein, there exists NO possibility that Justin can receive a constitutionally adequate adjudication of the constitutionality of that state censorship scheme through either a state or federal court.

Specifically in this case, the district court judge clearly has fourteen years invested in the current scheme. Given such a long and pervasive intimate association with the challenged statutes and judicial practices, it is entirely reasonable to conclude, and entirely unreasonable NOT to conclude, that the district court judge can NOT maintain the required appearance of impartiality. Upon the face of the Mississippi Supreme Court's public record, the district court judge has sat in judgement of and issued orders in support of the very state statutes of which Justin complains.

If, as Justin asserts, the simultaneous granting of political jurisdiction and judicial jurisdiction in the hands of a sole state official is apparent on the face of the Code, then the district court judge's failure to address the jurisdictional issues on every child custody or related case coming before the Mississippi Supreme Court during his tenure makes the case of actual bias very strong.

Can a state supreme court really honestly fail to see that a state trial court is litigating the best interests of a child who not only has NOT established standing against either parent but quite literally could NOT establish such standing. How embarrassing would it be for a former state supreme court justice, now a federal district court judge, if the state's family law code were demonstrated to be entirely fundamentally and facially unconstitutional under nearly every constitutional standard, as established by Supreme Court precedent in case after case dating back to the 1970's and beyond?

When reviewing the Mississippi family law code, one need only look to the face of the statutes under state and federal separation of powers principles with burden of proof principles and standing principles to see how profoundly broken the current code is.

It is axiomatic that authority to administer, regulate, and enforce state policy interests is an executive authority.

It is axiomatic that state regulation of fundamental rights is presumptively unconstitutional thus mandating that a state official appear and present testimony in support of the state's policy interests in every contested case before the state can overcome the presumption of unconstitutionality and the state court can gain

jurisdictional jurisdiction to initiate dispositional proceedings and to issue dispositional judicial relief against fundamental rights under the challenged civil statute.

It is apparent from the face of the Mississippi Family Code that the Mississippi Legislature has utterly failed to delegate executive authority to any executive official or executive agency to assert the states family law policy interests regarding child custody between fit parents through testimony before a state court. That executive authority for any given family exists only in the hands of the trial court judge who can NOT enter evidence in a trial over which he or she presides.

It is axiomatic that the natural rights of parents to have and to maintain intimate and expressive, close family, parent-child speech, association, worship, and family privacy are protected by the First Amendment at strict scrutiny.

It is axiomatic that the natural rights of parents to make care, custody, and control determinations for their own natural children is constitutionally protected as a fundamental right.

Thes simple facts prove with certainty that the state statutes in question are facially unconstitutional because there is NO possible way that the state may provide an official to testify in support of overcoming the state's burden of proof who holds legitimate authority to do so. Consequently, by operation of federal constitutional presumption, the offending statutes are unconstitutional and must always remain unconstitutional.

It is axiomatic that depriving a child of a fit parent serves NO legitimate state interest.

It is axiomatic that punishing a child with loss of fundamental rights to a fit parent as condition of the marital choices of their parents is unconstitutional under rational basis review.

It is axiomatic that children have First Amendment rights of their own that stand protected against the state action of a child custody court.

It is axiomatic that where the state deprives the child of constitutional protections of those First Amendment rights, even for short periods of time, the child has suffered irreparable concrete injury that is lawfully traceable to the unlawful actions of the state or one of its agents acting unlawfully, as the legal fiction goes.

It is axiomatic that where the state child custody proceedings irreparably injure the child, the child custody proceedings are defeating the core purpose asserted in support of the child custody statutes, serving the best interests of the child.

For these reasons it is clear that there exists NO set of circumstances under which the statutes being challenged can survive rational basis review in a competent court.

Then there is the overbreadth challenge to the state's assertion of "broad discretion" to impose viewpoint-based prior restraints on a fit parent and a child where the prior restraints are justified by a merely "substantial" sate interest (overinclusive)

and where the state fails to provide the asserted as necessary protections to children whose parents remain married to one another, making the interest wildly underinclusive.

It is axiomatic that viewpoint-based prior restraints are presumptively overreaching.

All of these clearly facially unconstitutional approaches to regulating the pre-existing fundamental rights of parents and children are predicated upon nothing more than the state's disapproval of the parents' otherwise lawful and constitutionally protected privacy choices regarding marriage to one another.

The illegitimacy cases of the 1970's where litigated on the premise that punishing either the parent or the child with loss of parent-child related rights as a penalty for marital choices made by the parents was a violation of the Equal Protection Clause. The Supreme Court over quite a few cases held and upheld that such marital discrimination was impermissibly arbitrary and punitive causing it to directly conflict with the provisions of the Equal Protection Clause.

The very concept of marital discrimination in American jurisprudence comes from exactly the type of scheme that the state of Mississippi is openly conducting today.

It is conservatively estimated that in excess of ten billion dollars annually flows through these illegal child custody courts into the hands of those who enrich themselves off the irreparable injury of children. Simply exposing definitively that their income derives from the irreparable injury of children would cause massive reputational and pecuniary loss to everyone even remotely connected to this scheme or connected to the derivative money that flows from it.

Tens of billions of dollars are at stake in this Court's resolution to this Petition.

Tens of billions of dollars are arrayed, through the individual self-preservation interests of everyone even remotely involved in this scheme, to keep Justin in prison, to quell Justin's petitions for relief, and to frustrate Justin's efforts to vindicate his federal rights in a federal court.

The personal and pecuniary interests of the district court judge are undeniably intimately bound up in this morass of unconstitutional and likely criminal activity by judges, by legislators, by Attorney's General, by family law attorneys, by psychological health evaluators, supervised visitation centers, Guardians ad Litem, Attorneys ad Litem, etc. The list of impermissible or questionable personal and pecuniary interests would take many years to unravel in a RICO suit and even then, massive parts of the scheme are likely to go unrevealed.

In the face of all of this, the interests of the federal courts in preventing the recusal of this district court judge and the appointment of a federal judge with absolutely NO connections to this illegal scheme are de minimis against Justin's interests and the

interests of every American in the protection of constitutional rights against state officials and private actors who would violate those rights for profit.

§455 Motion
*This Court should direct the district court to promptly decide Justin's §455*
*Motion Challenging the District Court's Jurisdiction and to take sua*
*sponte action to ensure that all jurisdictional mandates are met.*

This Court should grant Justin's Petition for Writ of Mandamus and direct the district court to promptly decide Justin's Jurisdictional Challenge Motion and promptly establish and demonstrate compliance with all other applicable jurisdictional mandates upon the district court.

In the context of jurisdictional challenges, unreasonable delays have the ability to deprive litigants of access to a competent federal court in which to vindicate their federal rights as against unlawful incarceration under an unlawful civil scheme where individuals are imprisoned NOT for violation of judicial orders but rather are imprisoned for violation of advisory orders issued by a judge impermissibly exercising political jurisdiction rather than judicial jurisdiction.

The challenge is NOT to the district court's general jurisdiction to hear Justin's habeas corpus petition, which Justin believes he has properly established, but rather to the judge's authority to preside over judicial proceedings where Congress has ordered that judge to recuse himself or where, by constitutional mandate, the judge can NOT adequately perform the mandated functions of judges in this case, e.g. neutrality, impartiality, independence.

Federal courts are courts of limited jurisdiction. United States v. LaBella, 75 M.J. 52. Every federal court must satisfy itself of its own jurisdiction sua sponte. United States v. Jacobsen, 77 M.J. 81. When challenged a court must demonstrate its jurisdiction. United States v. Hale, 78 M.J. 268. Jurisdiction is the power of a court to decide a case or issue a decree. United States v. Hennis, 79 M.J. 370. Consequently, where a judge is commanded to recuse, the court is without power to decide the case or issue a decree other than recusal.

While Fed. R. Civ. P. 72(a) directs magistrate judges to "promptly conduct" nondispositive matters, it does NOT appear to this pro se litigant that the rule applies to district court judges or that there is another similar rule for that purpose. However, promptly conducting dispositive matters is clearly an issue of fundamental fairness under procedural due process mandates and Justin believes that the United States Constitution entitles him to essentially the same procedural protections afforded by rule 72 to magistrate judges when dispositive matters are before the district court judge.

It is NOT clear that the federal rules of civil procedure have adopted a set of rules governing recusal under the statutory mandate of 28 U. S. C. §455. Justin asserts that basic rules of fundamental fairness under procedural due process mandates must prevail.

Because 28 U. S. C. §455 deprives the district court judge of authority to take any further action in the habeas corpus proceedings, which blocks Justin from receiving properly pleaded for relief, speedy resolution of the §455 question is essential to fundamental fairness. This is of particular concern under §455 where the core issue addressed by the statute is one of fundamental fairness in terms of access to an impartial judicial decision-maker which is fully consistent with constitutional mandates.

Taken at face value §455 appears to be a clear exercise of Congressional authority to enforce constitutional mandates by limiting the ability of certain judges to establish subject matter jurisdiction in a given case.

### Within Jurisdiction
*It is within tis Court's discretion to issue a writ directing the district court to promptly decide Justin's jurisdictional challenge.*

It is axiomatic that this Court may issue mandamus relief to compel a district court judge to comply with federal law.

Relator has demonstrated that he has a right to the writ.

Relator has demonstrated that there exists no other adequate means to prevent the bias and irreparable injury and after the fact relief cannot restore time imprisoned unjustly.

The federal judiciary has a strong and vital interest in maintaining the integrity and the appearance of integrity of the federal judiciary. Relator has raised credible allegations of systemic state court bias and widespread bias in the federal courts caused by federal judges who were formally state court judges and are implicated in Relator's claims.

Further, Relator has credibly demonstrated how the rules and practices of the federal judiciary result in systemic martial discrimination that prevents a class of parent and a class of child from any access to any court, state or federal, wherein they may vindicate their federal rights against state civil law and the vindication of that state family law by state court judges.

### Within Discretion
*It is within this Court's discretion to issue a writ directing the district court to take action to ensure its own jurisdiction.*

The fashioning of a remedy under 28 U. S. C. §455 is a judicial task and issuing a writ of mandamus is an appropriate judicial remedy in this case, see <u>US v. Jordan</u>, 49 F. 3d 152, 158-160 (5th Circuit 1995):

> We must now consider the appropriate remedy for the breach of Section 455(a). Although Section 455(a) defines the circumstances that mandate disqualification of federal judges, it silently delegates to the judiciary the

task of fashioning the remedies that will best serve the purpose of the legislation...

The apparent harshness of the sentence, the essentially unbridled sentencing discretion of Judge Melinda Harmon in this pre-Guidelines case,[14] the appearance of impropriety, and the allegations by Appellant that her fears of bias were realized in the sentencing requires this Court to vacate the sentence.[15] The integrity of the judicial system needs the rehabilitation that would be gained by vacating the sentence and resentencing Appellant. Affirming the sentence would only compound the damage done.

We embrace the method utilized in United States v. Couch,[16] in dealing with this sensitive situation. In Couch the Chief Judge of the Fifth Circuit assigned the case to a judge outside of the district in which it originated to adjudicate the claims of partiality. Judge Walter confirmed the conviction concluding that no actual partiality existed.[17] However, in order to avoid the appearance of partiality, Judge Walter resentenced the defendant. Although Couch dealt with a habeas situation, which called for a lesser standard than does our appeal, we nonetheless believe that a similar approach is needed in the case before us. Section 455(a) silently delegates to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation. Liljeberg, 486 U.S. at 862, 108 S.Ct. at 2204. "The goal of Section 455(a) is to avoid even the appearance of partiality." Id. at 860, 108 S.Ct. at 2203. In order to serve that goal, in this case, the sentence must be vacated.

Realtor has made a clear case for the appearance of bias and in order to serve the goal of avoiding even the appearance of partiality to the state's interests in the habeas corpus proceedings, the district court judge should be compelled to recuse.

### Necessary to Cure Irreparable Injury and Prevent Prejudice
*A writ of mandamus is necessary to stop ongoing irreparable injury and to prevent irreparable injury and to prevent irreparable prejudice against federal law and against Justin's federal rights.*

The issue in this case is one that strikes to the heart of public confidence in the judiciary because the underlying allegation is that state court judges are systemically irreparably injuring children for money by simultaneously exercising political jurisdiction and judicial jurisdiction. When the federal court judge who is taking NO action whatsoever on a habeas corpus petition for someone who has been imprisoned for over six years for asserting his fundamental rights against a state judge's exercise of political jurisdiction enforced impermissibly by the use of judicial contempt powers has a long history of legislating and adjudicating the very statutes and government practices complained of in the habeas petition, the appearance of bias is unavoidable.

The Fifth Circuit has held that the appearance of impropriety in a 28 U. S. C. §455 proceeding is of vital public importance, see US v. Jordan, 49 F. 3d 152, 155, 156 (5th Circuit 1995):

> Courts have repeatedly expressed the importance of an impartial judiciary: "[o]ne of the fundamental rights of a litigant under our judicial system is that he is entitled to a fair trial in a fair tribunal, and that fairness requires an absence of actual bias or prejudice in the trial of the case." United States v. Wade, 931 F.2d 300, 304 (5th Cir.) (quoting United States v. Brown, 539 F.2d 467, 469 (5th Cir.1976)), cert. denied, 502 U.S. 888, 112 S.Ct. 247, 116 L.Ed.2d 202 (1991); In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1954). The right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public's confidence in the impartiality of our judges and the proceedings over which they preside. "Justice must satisfy the appearance of justice." In re Murchison, 349 U.S. at 136, 75 S.Ct. at 625. This is the very purpose of 28 U.S.C. § 455(a); Section 455(a) provides that a judge shall recuse herself from any proceeding in which her impartiality might reasonably be questioned. The Supreme Court, in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860-61, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855 (1988), described the standard as whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality.[3] "The goal of section 455(a) is to avoid even the appearance of partiality." Id. at 860, 108 S.Ct. at 2203. Put simply, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself.

If, as Relator asserts, the state trial court judge had NO judicial jurisdiction to litigate the interests of a nonlitigant child against the parental rights of their own fit father and if the state trial court judge was impermissibly compelling Movant to prove his fitness as a parent where the federal constitution demands that he be presumed to be fit, then Relator has been a political prisoner for six years. Certainly, imprisonment under political jurisdiction as a political punishment is an irreparable injury.

This issue is one of constitutional dimension and Relator is asking for action to prevent unnecessary constitutional infringement where after the fact action would require more drastic action. Relator has clearly made the case that the district court judge has direct, personal, substantial, and pecuniary interests in preventing this habeas from being litigated and that is more than sufficient to justify the preventative measures Relator is requesting, US v. Couch, 896 F. 2d 78, 81, 82 (5th Circuit 1990):

> To give substance to this imprecise inquiry the Aetna court adopted as a "reasonable formulation" the inquiry whether the "situation is one `which would offer a possible temptation to the average ... judge to ... lead him not to hold the balance nice, clear and true.'" 475 U.S. at 822, 106 S.Ct. at

1585 (quoting Ward v. Monroeville, 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972)). Applying this due process standard to the case before it, the Court concluded that although general allegations of bias and hostility do not rise to a due process violation, the justice's financial stake in the outcome — regardless of whether he was in fact impartial — was "direct, personal, substantial [and] pecuniary" enough to constitute a violation of the Due Process Clause, 475 U.S. at 824-25, 106 S.Ct. at 1586-87.

Aetna thus instructs that the Due Process Clause "may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." 475 U.S. at 825, 106 S.Ct. at 1587. Sometimes, of course, but not always. The inquiry commanded by section 455 and that commanded by the Due Process Clause are not the same. The Due Process Clause requires a judge to step aside when a reasonable judge would find it necessary to do so. Section 455 requires disqualification when others would have reasonable cause to question the judge's impartiality. It is this additional, systemic concern for avoiding the appearance of impropriety that makes the section 455 standard for disqualification more demanding than that imposed by the Due Process Clause. At some point the two tests overlap. We conclude that it is this area of overlap that the Liljeberg court was referring to when it noted that the concern for public perceptions of judicial integrity has "constitutional dimensions." 486 U.S. at 865 n. 12, 108 S.Ct. at 2205 n. 12, 100 L.Ed.2d at 875 n. 12. See Walberg v. Israel, 766 F.2d 1071 (7th Cir.), cert. denied, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985).

All Relator asks is that his habeas corpus petition be heard by a district court judge who has NO previous connections to the state scheme being challenged.

Mandamus is Appropriate

*Mandamus is appropriate because an overwhelming body of well-established Supreme Court and Fifth Circuit case law holds in favor of impartiality of judges.*

Relator filed a 28 U. S. C. §455 motion with the district court over five months ago spelling out his justifications for recusal under §455. The district court has NOT responded in any way. The district court has taken no affirmative action of any kind that appears in the court's docket. If it weren't for the docket demonstrating that a judge was assigned to the case, Relator would have no way to even know that his motions were being received by a judge.

Justice delayed is justice denied. Every day unjustly incarcerated is of constitutional significance. The delay itself creates the appearance of bias and the appearance of intent to protect the state by delay which helps the state and hurts Relator.

Requested Relief
*This Court should direct the district court to act upon Justin's §455 Motion and demonstrate its jurisdiction in every other applicable capacity.*

This case credibly raises the specter of nationwide pervasive state and federal corruption against divorced parents and their minor children for massive nationwide profits, a significant portion of which is provided through Title IV-D of the Social Security Act in a manner that provides direct pecuniary benefit to states in a competitive system that rewards states for irreparably injuring children.

This case raises credible concerns regarding the federal judicial rules and practices that facilitate and protect systemic state marital discrimination schemes whereby parents and children are deprived of First Amendment and other fundamental rights through viewpoint-based prior restraints as punishment for marital choices. Federal rules and practices deprive litigants and their children of accessing federal courts to vindicate federal rights as impermissible marital discrimination. This occurs because states delegate political jurisdiction to administer, regulate, and enforce state political policy interests against litigants to state judges. When individuals raise federal question challenges in federal court, state judges claim judicial immunity for performing political functions and federal judges impermissibly permit them to get away with this.

In this particular case, the district court judge has direct personal and reputational interests at stake that would be adversely affected should Relator prevail which makes it reasonable to challenge the district court judge's ability to remain properly impartial.

Relator has filed a motion to recuse under §455 and the district court judge has simply ignored this motion as he has ignored every pleading filed by Relator. It is as if the district court is a black hole where pleadings go to die.

There is NO possibility of the appearance of justice unless this Circuit Court takes direct responsibility for ensuring that the administrative and judicial functions of the district courts, and this particular district court, are executed in a manner that actively guards against the type of pervasive marital discrimination asserted herein.

Relator requests this Court to direct the district court to immediately respond to Relator's §455 motion and recuse himself under the argument raised in that motion and raised herein.

Additionally, the federal courts have administrative committees whose purpose and intent are to ensure that the administration of the federal courts is conducted efficiently, effectively, and in full compliance with federal equal protection law. The Chief Justice of this Appellate Court holds a seat on one such committee and she should be made aware of the assertions made herein to better fulfil those administrative responsibilities.

Conclusion
All Relator seeks is an opportunity to challenge the state civil law statutes that assert state authority to imprison him for asserting his federal fundamental rights

against impermissibly compelled search, seizure, and speech ordered in the best interests of a nonlitigant who lacks standing to be a litigant and to challenge the simultaneous exercise of political jurisdiction and judicial jurisdiction over the same individuals regarding the same subject matter under the same facts and circumstances whereby the state's civil law political policy interests are impermissibly enforced by the misappropriation of the judicial power of contempt.

## NOTES:

Ridgway v. Baker, 720 F. 2d 1409 (5th Circuit 1983),
*1412 While a case improperly removed from a state to a federal court may be remanded,[3] there is no authority to transfer a case from a federal to a state court. Even if the federal district court had such power, the constitutional issue would not be obviated: if Ridgway was jailed despite his lack of counsel, he is entitled to be released from custody, and the belated appointment of counsel now, a year and a half later, could not retroactively validate the proceedings. Due process cannot be accorded nunc pro tunc to validate a period of imprisonment imposed without proper proceedings.

As we have noted, Ridgway presented his habeas petition to the Texas intermediate and supreme *1413 courts, both of which denied his claim without explanation. Once a federal claim has been submitted to a state's highest court, the exhaustion requirement is satisfied, even if the state court fails to address the federal claim. Smith v. Digmon, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978).

At 1413, 1414, The state's argument that the contemnor imprisoned only for civil contempt has, in the aphoristic phrase, "the keys of his prison in his own pocket," ignores two salient facts: that the keys are available only to one who has enough money to pay the *1414 delinquent child support and that, meanwhile, the defendant, whatever the label on his cell, is confined. If the court errs in its determination that the defendant has the means to comply with the court's order, the confinement may be indefinite. Such an error is more likely to occur if the defendant is denied counsel. Viewed in this light, a civil contempt proceeding may pose an even greater threat to liberty than a proceeding labeled "criminal," with a correspondingly greater need for counsel.

Moreover, the line between civil and criminal contempt is rarely as clear as the state would have us believe. In some instances, the proceeding has a dual character. "Thus, when the court imposes a fine or imprisonment for the violation of a child support order, it is punishing for yesterday's contemptuous conduct. This is essentially criminal contempt. When it adds the coercive sanction of imprisonment until the order is complied with, it is announcing the consequences of tomorrow's contumacious conduct. In the latter instance, the contempt is civil in nature." Ex parte Hosken, 480 S.W.2d 18, 23 (Tex.Civ.App.1972) (citing Ex parte Ramzy, 424 S.W.2d 220, 227 (Tex.1968) (Norvell, J., concurring); Ex parte DeWees, 146 Tex. 564, 210 S.W.2d 145 (1948).

More fundamentally, if the court determines during the contempt hearing that the contemnor was capable of making the payments at the time they became due and failed to do so, it may confine him for his past contumacious conduct. This sanction is punitive in nature, the term is fixed and definite, and subsequent voluntary compliance does not permit the contemnor to avoid punishment for his past acts. Thus, he is held in criminal contempt. Ex parte Werblud, supra. In a child support proceeding, then, criminal as well as civil sanctions may be imposed. It is only after the evidence is presented and the sentence is imposed that one may discern whether the result is a civil or criminal penalty. Thus, when the contemnor is summoned to court to show cause why he should not be held in contempt for non-payment of support, he is faced with the prospect of a criminal commitment.

===

The underlying federal question in all of this is simply whether a sole state official may imprison a person indefinitely without trial and without conviction of any crime for nothing other than asserting their constitutional right to be presumed to be a fit parent who makes lawful choices for their own natural child against the state's desire to compel them to prove their fitness through compelled psychological examinations as a penalty for divorce?

fundamental right to vindicate their federal rights in a federal court, the wall remains solid without even a crack at this point.

Justin contends that the jurisdictional mandate of 28 U. S. C. §455 is crystal clear regarding reasonable challenges to a judge's ability to remain properly impartial, contends that federal law mandates that state and federal judges must remain neutral, impartial, and independent of the government policy interests being challenged, and contends that the Article III mandate that judges must establish and maintain their jurisdictional authority sua sponte are clearly violated by the actions of the district court.

### Exceptional Circumstances Exist

*The state has coopted the judicial contempt power to enforce its civil law policy interests against individuals in a manner that imposes extreme burdens on anyone who challenges the state's enforcement of its civil law.*

Justin is imprisoned on contempt charges. The nature of the contempt charges combined with the state trial court's "broad discretion" to infringe the fundamental rights of litigants justified by the state's mere "substantial" interest in pursuing a child's best interests has been asserted by the state to enable sweeping violations of fundamental rights upon nothing more than the mere unreviewable viewpoint of a sole state official.

Here, the state official, a state trial court judge, is compelling Justin to waive fundamental rights and prove his fitness as a parent, where he is already a natural fit parent with fully vested federal constitutional parental rights and is therefore entitled to federal constitutional protections against being compelled to prove that which the state must presume by constitutional mandate.

Having been incarcerated for over six years with NO access to a law library, it is impossible for Justin to receive a fair trial, even if the state scheme permitted fair trials. If Justin's only route to receive constitutional review of his extended incarceration is to submit to a fundamentally unfair show trial, then Justin asks this Court to make a holding to that effect as its reason for denying this mandamus petition.

The state's appellate court judges were all previously state trial court judges who did exactly what Justin is challenging. They can NOT be properly impartial.

It is NOT entirely clear that a final trial would result in Justin's release from incarceration because state child custody courts claim continuing jurisdiction until the child reaches the age of majority, which is 21 in Mississippi. It is entirely conceivable and likely, given the state's powerful interest in preventing Justin from litigating his challenges to the illegal state scheme in a federal court, that Justin's incarceration would be continued until his son reaches the age of 21 for the specific purpose of frustrating Justin's ability to petition a federal court for civil rights relief.

Justin asserts that the purpose for which he has been incarcerated for so long is to prevent him from defending himself and as retaliation by powerful interests for daring to challenge their unbridled authority. The right to petition a court is a First Amendment protected fundamental right. Justin's prolonged incarceration is intended to frustrate the exercise of his First Amendment rights to challenge an illegal state scheme, that financially benefits a great many people, and the imprisonment is effectively a First Amendment retaliation action against the challenges Justin has already raised against the scheme.

Of additional note in this case, Justin has been confined for more than six years without access to a law library and without benefit of counsel which amounts to a denial of his right to defend himself against the state's unlawful actions. Justin is at the mercy of others for their assistance in defending himself, and that insufficient guarantee of his right to mount a defense against his incarceration should have resulted in Justin's release a long time ago.

The state of Mississippi has incarcerated Justin for over six years and in none of that time has he ever been provided the means to defend himself demanded by the United States Constitution, <u>Bounds v. Smith</u>, 430 US 817, 823-828 (1977):

> "Meaningful access" to the courts is the touchstone... our decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts... We hold, therefore, that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

It is NOT sufficient that Justin has been able to file pleadings because in order to be meaningful the access must provide sufficient research materials to adequately challenge the state, <u>Morrow v. Harwell</u>, 768 F. 2d 619, 622, 623 (5th Circuit 1985):

> The inmates' ability to file is not dispositive of the access question, because the Court in Bounds explained that for access to be meaningful, post-filing needs, such as the research tools necessary to effectively rebut authorities cited by an adversary in responsive pleadings, should be met... In short, this found right of access includes the ability to file a legally sufficient claim.

### *Pervasive Bias*

*<u>Federal law, Title IV-D, conveys a massive pecuniary interest to the state judiciary to irreparably injure children so that Social Security can unconstitutionally save money by having the states perform the unconstitutional violation of rights necessary under the scheme.</u>*

Title IV-D alone provides billions of federal dollars to states every year predicated upon the amount of child support ordered and the amount of child support collected in child custody suits. The current justifications for child support statutes, if they are justified at all, is that an unequal "grant" of custody over a child by a state court necessitates one parent paying the other parent. Therefore, the only way to maximize Title IV-D payments to the state is to consistently award unequal custody.

The core problem with this is that natural parents already have fully vested federally protected natural parental rights that fully encompass the state concept of legal and physical custody over the child. The only permissible way for a state court judge to "grant" fundamental natural rights already held by a parent is if those already held rights have been terminated by statutory authority or by judicial presumption.

It is only after seizing complete dominion over the child and de facto terminating the fundamental rights of both parents and the child to one another, that the state court in this case gained any state statutory authority to "grant" some limited portion of those natural rights back to a parent as a limited parental license subject only to the arbitrary viewpoint of a sole state official as to what is in the child's best interests.

Establishment of what is best follows a clear pattern. The court investigates each parent's otherwise lawful and constitutionally protected child-rearing choices regarding matters of conscience in child-rearing and based upon that court's opinion about those parental choices the court arbitrarily chooses the "best" parent and grants to them the preferred custody license, leaving the less desirable custody license to the parent adjudged to be "less than best." The licenses are issued in the form of prior restraints on

speech and association as deemed to be in the child's best interest in the opinion of a sole state official.

As Justin has attempted to explain herein, there exists NO possibility that Justin can receive a constitutionally adequate adjudication of the constitutionality of that state censorship scheme through either a state or federal court.

Specifically in this case, the district court judge clearly has fourteen years invested in the current scheme. Given such a long and pervasive intimate association with the challenged statutes and judicial practices, it is entirely reasonable to conclude, and entirely unreasonable NOT to conclude, that the district court judge can NOT maintain the required appearance of impartiality. Upon the face of the Mississippi Supreme Court's public record, the district court judge has sat in judgement of and issued orders in support of the very state statutes of which Justin complains.

If, as Justin asserts, the simultaneous granting of political jurisdiction and judicial jurisdiction in the hands of a sole state official is apparent on the face of the Code, then the district court judge's failure to address the jurisdictional issues on every child custody or related case coming before the Mississippi Supreme Court during his tenure makes the case of actual bias very strong.

Can a state supreme court really honestly fail to see that a state trial court is litigating the best interests of a child who not only has NOT established standing against either parent but quite literally could NOT establish such standing. How embarrassing would it be for a former state supreme court justice, now a federal district court judge, if the state's family law code were demonstrated to be entirely fundamentally and facially

unconstitutional under nearly every constitutional standard, as established by Supreme Court precedent in case after case dating back to the 1970's and beyond?

When reviewing the Mississippi family law code, one need only look to the face of the statutes under state and federal separation of powers principles with burden of proof principles and standing principles to see how profoundly broken the current code is.

It is axiomatic that authority to administer, regulate, and enforce state policy interests is an executive authority.

It is axiomatic that state regulation of fundamental rights is presumptively unconstitutional thus mandating that a state official appear and present testimony in support of the state's policy interests in every contested case before the state can overcome the presumption of unconstitutionality and the state court can gain jurisdictional jurisdiction to initiate dispositional proceedings and to issue dispositional judicial relief against fundamental rights under the challenged civil statute.

It is apparent from the face of the Mississippi Family Code that the Mississippi Legislature has utterly failed to delegate executive authority to any executive official or executive agency to assert the states family law policy interests regarding child custody between fit parents through testimony before a state court. That executive authority for any given family exists only in the hands of the trial court judge who can NOT enter evidence in a trial over which he or she presides.

It is axiomatic that the natural rights of parents to have and to maintain intimate and expressive, close family, parent-child speech, association, worship, and family privacy are protected by the First Amendment at strict scrutiny.

It is axiomatic that the natural rights of parents to make care, custody, and control determinations for their own natural children is constitutionally protected as a fundamental right.

Thes simple facts prove with certainty that the state statutes in question are facially unconstitutional because there is NO possible way that the state may provide an official to testify in support of overcoming the state's burden of proof who holds legitimate authority to do so. Consequently, by operation of federal constitutional presumption, the offending statutes are unconstitutional and must always remain unconstitutional.

It is axiomatic that depriving a child of a fit parent serves NO legitimate state interest.

It is axiomatic that punishing a child with loss of fundamental rights to a fit parent as condition of the marital choices of their parents is unconstitutional under rational basis review.

It is axiomatic that children have First Amendment rights of their own that stand protected against the state action of a child custody court.

It is axiomatic that where the state deprives the child of constitutional protections of those First Amendment rights, even for short periods of time, the child has suffered irreparable concrete injury that is lawfully traceable to the unlawful actions of the state or one of its agents acting unlawfully, as the legal fiction goes.

It is axiomatic that where the state child custody proceedings irreparably injure the child, the child custody proceedings are defeating the core purpose asserted in support of the child custody statutes, serving the best interests of the child.

For these reasons it is clear that there exists NO set of circumstances under which the statutes being challenged can survive rational basis review in a competent court.

Then there is the overbreadth challenge to the state's assertion of "broad discretion" to impose viewpoint-based prior restraints on a fit parent and a child where the prior restraints are justified by a merely "substantial" sate interest (overinclusive) and where the state fails to provide the asserted as necessary protections to children whose parents remain married to one another, making the interest wildly underinclusive.

It is axiomatic that viewpoint-based prior restraints are presumptively overreaching.

All of these clearly facially unconstitutional approaches to regulating the pre-existing fundamental rights of parents and children are predicated upon nothing more than the state's disapproval of the parents' otherwise lawful and constitutionally protected privacy choices regarding marriage to one another.

The illegitimacy cases of the 1970's where litigated on the premise that punishing either the parent or the child with loss of parent-child related rights as a penalty for marital choices made by the parents was a violation of the Equal Protection Clause. The Supreme Court over quite a few cases held and upheld that such marital discrimination was impermissibly arbitrary and punitive causing it to directly conflict with the provisions of the Equal Protection Clause.

The very concept of marital discrimination in American jurisprudence comes from exactly the type of scheme that the state of Mississippi is openly conducting today.

It is conservatively estimated that in excess of ten billion dollars annually flows through these illegal child custody courts into the hands of those who enrich themselves off the irreparable injury of children. Simply exposing definitively that their income derives from the irreparable injury of children would cause massive reputational and pecuniary loss to everyone even remotely connected to this scheme or connected to the derivative money that flows from it.

Tens of billions of dollars are at stake in this Court's resolution to this Petition.

Tens of billions of dollars are arrayed, through the individual self-preservation interests of everyone even remotely involved in this scheme, to keep Justin in prison, to quell Justin's petitions for relief, and to frustrate Justin's efforts to vindicate his federal rights in a federal court.

The personal and pecuniary interests of the district court judge are undeniably intimately bound up in this morass of unconstitutional and likely criminal activity by judges, by legislators, by Attorney's General, by family law attorneys, by psychological health evaluators, supervised visitation centers, Guardians ad Litem, Attorneys ad Litem, etc. The list of impermissible or questionable personal and pecuniary interests would take many years to unravel in a RICO suit and even then, massive parts of the scheme are likely to go unrevealed.

In the face of all of this, the interests of the federal courts in preventing the recusal of this district court judge and the appointment of a federal judge with absolutely NO connections to this illegal scheme are de minimis against Justin's interests and the interests of every American in the protection of constitutional rights against state officials and private actors who would violate those rights for profit.

§455 Motion

*This Court should direct the district court to promptly decide Justin's §455 Motion Challenging the District Court's Jurisdiction and to take sua sponte action to ensure that all jurisdictional mandates are met.*

This Court should grant Justin's Petition for Writ of Mandamus and direct the district court to promptly decide Justin's Jurisdictional Challenge Motion and promptly establish and demonstrate compliance with all other applicable jurisdictional mandates upon the district court.

In the context of jurisdictional challenges, unreasonable delays have the ability to deprive litigants of access to a competent federal court in which to vindicate their federal rights as against unlawful incarceration under an unlawful civil scheme where individuals are imprisoned NOT for violation of judicial orders but rather are imprisoned for violation of advisory orders issued by a judge impermissibly exercising political jurisdiction rather than judicial jurisdiction.

The challenge is NOT to the district court's general jurisdiction to hear Justin's habeas corpus petition, which Justin believes he has properly established, but rather to the judge's authority to preside over judicial proceedings where Congress has ordered that judge to recuse himself or where, by constitutional mandate, the judge can NOT adequately perform the mandated functions of judges in this case, e.g. neutrality, impartiality, independence.

Federal courts are courts of limited jurisdiction. United States v. LaBella, 75 M.J. 52. Every federal court must satisfy itself of its own jurisdiction sua sponte. United States v. Jacobsen, 77 M.J. 81. When challenged a court must demonstrate its jurisdiction. United States v. Hale, 78 M.J. 268. Jurisdiction is the power of a court to decide a case or issue a decree. United States v. Hennis, 79 M.J. 370. Consequently,

where a judge is commanded to recuse, the court is without power to decide the case or issue a decree other than recusal.

While Fed. R. Civ. P. 72(a) directs magistrate judges to "promptly conduct" nondispositive matters, it does NOT appear to this pro se litigant that the rule applies to district court judges or that there is another similar rule for that purpose. However, promptly conducting dispositive matters is clearly an issue of fundamental fairness under procedural due process mandates and Justin believes that the United States Constitution entitles him to essentially the same procedural protections afforded by rule 72 to magistrate judges when dispositive matters are before the district court judge.

It is NOT clear that the federal rules of civil procedure have adopted a set of rules governing recusal under the statutory mandate of 28 U. S. C. §455. Justin asserts that basic rules of fundamental fairness under procedural due process mandates must prevail.

Because 28 U. S. C. §455 deprives the district court judge of authority to take any further action in the habeas corpus proceedings, which blocks Justin from receiving properly pleaded for relief, speedy resolution of the §455 question is essential to fundamental fairness. This is of particular concern under §455 where the core issue addressed by the statute is one of fundamental fairness in terms of access to an impartial judicial decision-maker which is fully consistent with constitutional mandates.

Taken at face value §455 appears to be a clear exercise of Congressional authority to enforce constitutional mandates by limiting the ability of certain judges to establish subject matter jurisdiction in a given case.

## Within Jurisdiction
*It is within this Court's discretion to issue a writ directing the district court to promptly decide Justin's jurisdictional challenge.*

It is axiomatic that this Court may issue mandamus relief to compel a district court judge to comply with federal law.

Justin has demonstrated that he has a right to the writ.

Justin has demonstrated that there exists no other adequate means to prevent the bias and irreparable injury and after the fact relief cannot restore time imprisoned unjustly.

The federal judiciary has a strong and vital interest in maintaining the integrity and the appearance of integrity of the federal judiciary. Justin has raised credible allegations of systemic state court bias and widespread bias in the federal courts caused by federal judges who were formally state court judges and are implicated in Justin's claims.

Further, Justin has credibly demonstrated how the rules and practices of the federal judiciary result in systemic martial discrimination that prevents a class of parent and a class of child from any access to any court, state or federal, wherein they may vindicate their federal rights against state civil law and the vindication of that state family law by state court judges.

## Within Discretion
*It is within this Court's discretion to issue a writ directing the district court to take action to ensure its own jurisdiction.*

The fashioning of a remedy under 28 U. S. C. §455 is a judicial task and issuing a writ of mandamus is an appropriate judicial remedy in this case, see <u>US v. Jordan</u>, 49 F. 3d 152, 158-160 (5th Circuit 1995):

We must now consider the appropriate remedy for the breach of Section 455(a). Although Section 455(a) defines the circumstances that mandate disqualification of federal judges, it silently delegates to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation...

The apparent harshness of the sentence, the essentially unbridled sentencing discretion of Judge Melinda Harmon in this pre-Guidelines case,[14] the appearance of impropriety, and the allegations by Appellant that her fears of bias were realized in the sentencing requires this Court to vacate the sentence.[15] The integrity of the judicial system needs the rehabilitation that would be gained by vacating the sentence and resentencing Appellant. Affirming the sentence would only compound the damage done.

We embrace the method utilized in United States v. Couch,[16] in dealing with this sensitive situation. In Couch the Chief Judge of the Fifth Circuit assigned the case to a judge outside of the district in which it originated to adjudicate the claims of partiality. Judge Walter confirmed the conviction concluding that no actual partiality existed.[17] However, in order to avoid the appearance of partiality, Judge Walter resentenced the defendant. Although Couch dealt with a habeas situation, which called for a lesser standard than does our appeal, we nonetheless believe that a similar approach is needed in the case before us. Section 455(a) silently delegates to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation. Liljeberg, 486 U.S. at 862, 108 S.Ct. at 2204. "The goal of Section 455(a) is to avoid even the appearance of partiality." Id. at 860, 108 S.Ct. at 2203. In order to serve that goal, in this case, the sentence must be vacated.

Justin has made a clear case for the appearance of bias and in order to serve the goal of avoiding even the appearance of partiality to the state's interests in the habeas corpus proceedings, the district court judge should be compelled to recuse.

### Necessary to Cure Irreparable Injury and Prevent Prejudice
*A writ of mandamus is necessary to stop ongoing irreparable injury and to prevent irreparable injury and to prevent irreparable prejudice against federal law and against Justin's federal rights.*

The issue in this case is one that strikes to the heart of public confidence in the judiciary because the underlying allegation is that state court judges are systemically irreparably injuring children for money by simultaneously exercising political

jurisdiction and judicial jurisdiction. When the federal court judge who is taking NO action whatsoever on a habeas corpus petition for someone who has been imprisoned for over six years for asserting his fundamental rights against a state judge's exercise of political jurisdiction enforced impermissibly by the use of judicial contempt powers has a long history of legislating and adjudicating the very statutes and government practices complained of in the habeas petition, the appearance of bias is unavoidable.

The Fifth Circuit has held that the appearance of impropriety in a 28 U. S. C. §455 proceeding is of vital public importance, see US v. Jordan, 49 F. 3d 152, 155, 156 (5th Circuit 1995):

> Courts have repeatedly expressed the importance of an impartial judiciary: "[o]ne of the fundamental rights of a litigant under our judicial system is that he is entitled to a fair trial in a fair tribunal, and that fairness requires an absence of actual bias or prejudice in the trial of the case." United States v. Wade, 931 F.2d 300, 304 (5th Cir.) (quoting United States v. Brown, 539 F.2d 467, 469 (5th Cir.1976)), cert. denied, 502 U.S. 888, 112 S.Ct. 247, 116 L.Ed.2d 202 (1991); In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1954). The right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public's confidence in the impartiality of our judges and the proceedings over which they preside. "Justice must satisfy the appearance of justice." In re Murchison, 349 U.S. at 136, 75 S.Ct. at 625. This is the very purpose of 28 U.S.C. § 455(a); Section 455(a) provides that a judge shall recuse herself from any proceeding in which her impartiality might reasonably be questioned. The Supreme Court, in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860-61, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855 (1988), described the standard as whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality.[3] "The goal of section 455(a) is to avoid even the appearance of partiality." Id. at 860, 108 S.Ct. at 2203. Put simply, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself.

If, as Justin asserts, the state trial court judge had NO judicial jurisdiction to litigate the interests of a nonlitigant child against the parental rights of their own fit

father and if the state trial court judge was impermissibly compelling Movant to prove

his fitness as a parent where the federal constitution demands that he be presumed to be

fit, then Justin has been a political prisoner for six years. Certainly, imprisonment under

political jurisdiction as a political punishment is an irreparable injury.

This issue is one of constitutional dimension and Justin is asking for action to

prevent unnecessary constitutional infringement where after the fact action would

require more drastic action. Justin has clearly made the case that the district court judge

has direct, personal, substantial, and pecuniary interests in preventing this habeas from

being litigated and that is more than sufficient to justify the preventative measures

Justin is requesting, US v. Couch, 896 F. 2d 78, 81, 82 (5th Circuit 1990):

> To give substance to this imprecise inquiry the Aetna court adopted as a
> "reasonable formulation" the inquiry whether the "situation is one `which
> would offer a possible temptation to the average ... judge to ... lead him
> not to hold the balance nice, clear and true.'" 475 U.S. at 822, 106 S.Ct. at
> 1585 (quoting Ward v. Monroeville, 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34
> L.Ed.2d 267 (1972)). Applying this due process standard to the case
> before it, the Court concluded that although general allegations of bias
> and hostility do not rise to a due process violation, the justice's financial
> stake in the outcome — regardless of whether he was in fact impartial —
> was "direct, personal, substantial [and] pecuniary" enough to constitute a
> violation of the Due Process Clause, 475 U.S. at 824-25, 106 S.Ct. at 1586-
> 87.
>
> Aetna thus instructs that the Due Process Clause "may sometimes bar
> trial by judges who have no actual bias and who would do their very best
> to weigh the scales of justice equally between contending parties." 475
> U.S. at 825, 106 S.Ct. at 1587. Sometimes, of course, but not always. The
> inquiry commanded by section 455 and that commanded by the Due
> Process Clause are not the same. The Due Process Clause requires a judge
> to step aside when a reasonable judge would find it necessary to do so.
> Section 455 requires disqualification when others would have reasonable
> cause to question the judge's impartiality. It is this additional, systemic
> concern for avoiding the appearance of impropriety that makes the
> section 455 standard for disqualification more demanding than that
> imposed by the Due Process Clause. At some point the two tests overlap.

We conclude that it is this area of overlap that the Liljeberg court was referring to when it noted that the concern for public perceptions of judicial integrity has "constitutional dimensions." 486 U.S. at 865 n. 12, 108 S.Ct. at 2205 n. 12, 100 L.Ed.2d at 875 n. 12. See Walberg v. Israel, 766 F.2d 1071 (7th Cir.), cert. denied, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985).

All Justin asks is that his habeas corpus petition be heard by a district court judge who has NO previous connections to the state scheme being challenged.

## Mandamus is Appropriate
### *Mandamus is appropriate because an overwhelming body of well-established Supreme Court and Fifth Circuit case law holds in favor of impartiality of judges.*

Justin filed a 28 U. S. C. §455 motion with the district court over five months ago spelling out his justifications for recusal under §455. The district court has NOT responded in any way. The district court has taken no affirmative action of any kind that appears in the court's docket. If it weren't for the docket demonstrating that a judge was assigned to the case, Justin would have no way to even know that his motions were being received by a judge.

Justice delayed is justice denied. Every day unjustly incarcerated is of constitutional significance. The delay itself creates the appearance of bias and the appearance of intent to protect the state by delay which helps the state and hurts Justin.

## Requested Relief
### *This Court should direct the district court to act upon Justin's §455 Motion and demonstrate its jurisdiction in every other applicable capacity.*

This case credibly raises the specter of nationwide pervasive state and federal corruption against divorced parents and their minor children for massive nationwide profits, a significant portion of which is provided through Title IV-D of the Social

Security Act in a manner that provides direct pecuniary benefit to states in a competitive system that rewards states for irreparably injuring children.

This case raises credible concerns regarding the federal judicial rules and practices that facilitate and protect systemic state marital discrimination schemes whereby parents and children are deprived of First Amendment and other fundamental rights through viewpoint-based prior restraints as punishment for marital choices. Federal rules and practices deprive litigants and their children of accessing federal courts to vindicate federal rights as impermissible marital discrimination. This occurs because states delegate political jurisdiction to administer, regulate, and enforce state political policy interests against litigants to state judges. When individuals raise federal question challenges in federal court, state judges claim judicial immunity for performing political functions and federal judges impermissibly permit them to get away with this.

In this particular case, the district court judge has direct personal and reputational interests at stake that would be adversely affected should Justin prevail which makes it reasonable to challenge the district court judge's ability to remain properly impartial.

Justin has filed a motion to recuse under §455 and the district court judge has simply ignored this motion as he has ignored every pleading filed by Justin. It is as if the district court is a black hole where pleadings go to die.

There is NO possibility of the appearance of justice unless this Circuit Court takes direct responsibility for ensuring that the administrative and judicial functions of the district courts, and this particular district court, are executed in a manner that actively guards against the type of pervasive marital discrimination asserted herein.

Justin requests this Court to direct the district court to immediately respond to Justin's §455 motion and recuse himself under the argument raised in that motion and raised herein.

Additionally, the federal courts have administrative committees whose purpose and intent are to ensure that the administration of the federal courts is conducted efficiently, effectively, and in full compliance with federal equal protection law. The Chief Justice of this Appellate Court holds a seat on one such committee and she should be made aware of the assertions made herein to better fulfil those administrative responsibilities.

Conclusion

All Justin seeks is an opportunity to challenge the state civil law statutes that assert state authority to imprison him for asserting his federal fundamental rights against impermissibly compelled search, seizure, and speech ordered in the best interests of a nonlitigant who lacks standing to be a litigant and to challenge the simultaneous exercise of political jurisdiction and judicial jurisdiction over the same individuals regarding the same subject matter under the same facts and circumstances whereby the state's civil law political policy interests are impermissibly enforced by the misappropriation of the judicial power of contempt.

X _(signature)_ 4/13/24
Justin McPhail, Pro Se
37 Doak Street
Coranata, MS 38901



Justin McPhail, zone 3000
c/o Grenada County Adult Detention Center
27 Doak Street,
Grenada, MS 38901

Re: Cause no: 3:23-cv-00385-MPM-RP
Mississippi Northern District of Court

U.S. Court of Appeals
Fifth Federal Circuit
Office of the Clerk (Lyle W. Cayce)
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130-3408
(504. 310-7700)